**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| MONUMENT PEAK VENTURES, LLC, | |
| Plaintiff, | Civil Action No. |
| v. | 2:20-cv-00098-JRG-RSP |
| HITACHI KOKUSAI ELECTRIC INC. | |
| Defendant. | |

**DEFENDANT HITACHI KOKUSAI ELECTRIC INC.'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

I.     MPV Improperly Bases Arguments on Unasserted Claims and Misidentifies the Representative Claims. .................................................................................... 1

II.    The Asserted Claims of the '599 Patent Are Unpatentable Under 35 U.S.C. § 101. ......... 2

    A.    The '599 Claims Fail *Alice* Step 1. ........................................................ 3

    B.    The '599 Claims Fail *Alice* Step 2. ........................................................ 6

    C.    Unasserted Claim 14 Does Not Alter the §101 Analysis....................................... 7

III.    The Claims of the '746, '345 and '604 Video Summary Patents Are Unpatentable Under 35 U.S.C. § 101................................................................................ 8

    A.    The Argument that the Video Patent Claims Require a Particular Order of Steps is Baseless. .......................................................................... 8

    B.    The Video Summary Patent Claims Fail *Alice* Step 1. ....................................... 10

    C.    The Video Summary Patent Claims Fail *Alice* Step 2. ....................................... 12

IV.    No Claim Construction or Factual Disputes Exist that Preclude Granting Defendant's Rule 12(b)(6) Motion. ........................................................... 14

V.    MPV's Preemption Arguments Do Not Affect Ineligibility........................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Altris, Inc. v. Sumantec Corp.*,
    318 F.3d 1363 (Fed. Cir. 2003)..................................................................10

*Ameranth, Inc. v. Domino's Pizza, LLC*,
    792 F. App'x 780 (Fed. Cir. 2019), <u>cert. denied,</u> 141 S. Ct. 249 (2020)...................................2

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    788 F.3d 1371 (Fed. Cir. 2015).................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................14

*Boom!Payments, Inc. v. Stripe, Inc.*,
    No. 2020-1274, 2021 WL 116545 (Fed. Cir. Jan. 13, 2021)...................................14

*C-Cation Techs., LLC v. Time Warner Cable, Inc.*,
    No. 2:14-CV-0059-JRG-RSP, 2015 WL 1849014 (E.D. Tex. Apr. 20, 2015)........................9

*CardioNet, LLC v. InfoBionic, Inc,*
    955 F.3d 1358 (Fed. Cir. 2020)..................................................................5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014)................................................................10

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
    815 F. App'x 529 (Fed. Cir. 2020) ............................................................15

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)................................................................10

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016).........................................................5, 11, 12

*Hyper Search, LLC v. Facebook, Inc.*,
    No. CV 17-1387-CFC-SRF, 2018 WL 6617143 (D. Del. Dec. 17, 2018) ..............................8

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)...............................................................13

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017)...................................................................................4, 5, 6, 13

*Landmark Tech., LLC v. Assurant, Inc.*,
   No. 6:15-CV-76-RWS-JDL, 2015 WL 4388311 (E.D. Tex. July 14, 2015) ............................8

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004).................................................................................................9

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016)...............................................................................................5

*Network Architecture Innovations LLC v. CC Network Inc.*,
   No. 2:16-CV-00914-JRG, 2017 WL 1398276 (E.D. Tex. Apr. 18, 2017) ..............................15

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015)..............................................................................................15

*Procter & Gamble Co. v. QuantifiCare Inc.*,
   288 F. Supp. 3d 1002 (N.D. Cal. 2017) ...................................................................................6

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017)...............................................................................................6

*Research Corp. Techs. Inc. v. Microsoft Corp.*,
   627 F.3d 859 (Fed. Cir. 2010).............................................................................................6, 11

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017).................................................................................................7

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016).............................................................................................6, 12

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)..................................................................................... *passim*

*Uniloc USA, Inc. v. E-MDS, Inc.*,
   No. 6:14-CV-00625-RWS, 2015 WL 10791906 (E.D. Tex. Aug. 19, 2015) .........................14

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*,
   414 F. Supp. 3d 947 (E.D. Tex. 2019).............................................................................5, 6, 12

**Statutes**

35 U.S.C. § 101 .................................................................................................................. *passim*

**Court Rules**

Rule 12(b)(6)..........................................................................................................................14

Plaintiff MPV fails to legitimately rebut Kokusai's showing in its opening brief that each of the four asserted patents claim an abstract idea and are ineligible under 35 U.S.C. § 101. Kokusai provided analysis of the claims and their functional, results-based form typical of abstract claims, and cited analogous Federal Circuit authority addressing similar claim limitations.  MPV gave no meaningful response to those arguments, and no explanation why that binding Federal Circuit authority is inapplicable to the asserted claims.

Instead, MPV's opposition tries to overwhelm the court with baseless theories about the scope of the patents, erroneous allegations of specific technological improvements and unconventionality that are neither specific nor tethered to the claim language, reliance on unasserted claims, and continual restatements of the abstract idea itself as if that evades the *Alice* test.  It also relies on irrelevant and conclusory averments from its Second Amended Complaint and declarations, and pleas for unnecessary claim construction proceedings that cannot alter the Court's analysis.

Because Kokusai has demonstrated the '599 and video summary patents' asserted claims are directed to an abstract idea without an inventive concept, dismissal of MPV's Second Amended Complaint is warranted.

## I.    MPV Improperly Bases Arguments on Unasserted Claims and Misidentifies the Representative Claims.

Kokusai filed its motion to dismiss on January 6, 2021.  At that time, MPV had not yet identified the asserted claims—other than asserting one claim from each of the four patents in its Second Amended Complaint (SAC).  Accordingly, Kokusai's motion addressed all claims for each of the four asserted patents, using the four claims identified in the SAC as representative.

On January 13, 2021, MPV served its infringement contentions identifying the asserted claims for each of the four patents-in-suit.  The list of asserted claims is below:

| Patent | Asserted Claims |
|--------|-----------------|
| '599 | 1-5, 7-9, 11-13 |
| '345 | 1-5, 7, 8, 13-16, 19, 20 |
| '746 | 1-4, 6, 12-16, 19, 20, 22 |
| '604 | 1-5, 7-11, 13-16, 18 |

Only the asserted claims should be at issue in defendant's motion.  Inexplicably, MPV's opposition based certain arguments on unasserted claims without providing authority for, or reason justifying, this Court addressing unasserted claims.  Precedent dictates that courts lack jurisdiction to address the patent eligibility of unasserted claims.  *Ameranth, Inc. v. Domino's Pizza, LLC*, 792 F. App'x 780, 785 (Fed. Cir. 2019), cert. denied, 141 S. Ct. 249 (2020) (holding that the district court did not have jurisdiction to determine eligibility of claims not asserted in infringement contentions).

MPV also challenges the representative claims chosen by Kokusai based, in part, on MPV's mistaken assertion that Kokusai did not address other claim limitations.  Opp. at 10.  But Kokusai provided analysis why other limitations make no meaningful distinction.  HK Br. at 11-12; 16-17.  MPV takes a different, and quite unusual, approach.  For the '345 and '746 patents, it selects a ***dependent claim*** as representative, with no explanation of how a dependent claim can properly represent all claims of the patent.  *E.g.*, Opp. at 10, 18.  And for the '604 patent, MPV identifies a different independent claim (claim 9) because that claim allegedly avoids post-processing.  *Id.* at 19.  But post-processing (or the avoidance of it) is not an element of that claim.  Ex. D[1], col. 16:1-16.  Lastly, MPV argues that '599 claim 1 is not representative, but offers no alternative and gives no explanation why—other than generalized statements about alleged specific improvements.  Opp. at 27.

**II.    The Asserted Claims of the '599 Patent Are Unpatentable Under 35 U.S.C. § 101.**

---

[1] Cites to Exhibits A-D refer to the exhibits attached to Kokusai's opening brief.

### A.   The '599 Claims Fail *Alice* Step 1.

The asserted claims of the '599 patent use functional, results-focused language without specifying *how* to achieve those results, which the Federal Circuit has consistently held to be an indicator of abstract claims.  HK Br. at 10.  MPV ignores this argument and the Federal Circuit precedent relied upon.  It fails to rebut *Two-Way Media*, *Electric Power Grp.*, *Univ. of Fla. Research Found.*, and other Federal Circuit precedent cited by defendant where functional, results-focused language led to unpatentability findings.

In fact, MPV largely ignores the claim language altogether.  It accuses defendant of "over-generalization" of the claims and glossing over "specific and meaningful limitations."  Opp. at 27.  Yet, Defendant can hardly over-generalize claims containing only "analyzing" and "modifying" steps; their brevity and generality speak for themselves.  Instead of focusing on the claim language, MPV puts heavy emphasis on averments of allegedly innovative solutions ***not found in the claims***.  For instance, MPV touts that the invention "enables spatially non-uniform adjustments," "skin tone optimization," "colorimetric realignments," and "improved accuracy," none of which are in the claims.  *Id*. at 24.

Equally unpersuasive is MPV's argument that its claims are not abstract because they are directed "to an improvement in computer technologies" and provide "specific technological solutions to technological problems," because MPV provides little argument in its Step 1 response and instead relies on conclusory statements.  *Id*. at 25-27.  At most, MPV cites to its SAC, which describes a number of purported improvements, none of which are in the claims.  *See Id*. at 25, *citing* SAC ¶¶ 116-117.  For instance, MPV argues the invention included the improvement of a rendering system that could compensate for differing skin tones independent of the capture type (*i.e.*, photographic film, paper, and printer) used.  *Id*. at 24-25; SAC ¶ 147.  This merely states a problem without explanation of how it was solved with a claimed technological improvement; the

claims contain nothing supporting these arguments and no mention of the capture type.  MPV also references the solution to the problem of "colorimetric skin tone realism errors" by making "specific and selected colorimetric parameter translation adjustments to specific portions of the image file," which merely states an alleged problem, and then parrots the abstract claim language calling for modifying the colorimetric parameter.  *Id.* at 24.  Lastly, MPV argues the claimed inventions "require a novel apparatus for modifying digital images that did not previously exist." *Id.* at 25.  A "novel apparatus" is itself abstract, and MPV gives no description of the supposedly novel apparatus; at most, it presumably performs the abstract claim steps of analyzing and modifying.

The problem with MPV's argument is that the claims do not include language beyond the abstract idea itself—simply analyzing and modifying.  Nothing in the claims provide the required "*how*," such as specific requirements for how to achieve the desired result.  Similar arguments have consistently been rejected under similar facts.  For instance, in *Intellectual Ventures I*, the patentee maintained that "specific data structures" recited in the claims were the requisite "how" that "provide a concrete solution."  *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017).  The Federal Circuit disagreed, explaining that "[a]lthough these data structures add a degree of particularity to the claims, the underlying concept embodied by the limitations merely encompasses the abstract idea itself of organizing, displaying, and manipulating data of particular documents."  *Id.* at 1341.

Likewise, in *Two-Way Media*, the claim language included generic terms such as "converting" and "routing."  *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).  The patentee asserted validity based on "solv[ing] various technical problems, including excessive loads on a source server, network congestion, unwelcome variations

in delivery times, scalability of networks, and lack of precise recordkeeping." *Id*. at 1339.  The Court again disagreed, holding that the claim "uses generic functional language to achieve these purported solutions," without "any requirements for how the desired result is achieved." *Id.*

The holdings in *Intellectual Ventures* and *TwoWay Media* apply here.  MPV's arguments that its invention improves technology fails for the same reason: an abstract method of analyzing and modifying that purportedly improves a real-world system, is nonetheless an abstract idea.

Even though MPV recognizes the requirement of ***specific*** applications or improvements, it provides only conclusory averments that the claims "focus on a specific means or method," redundant complaints of "over-generalization," and citation to a few non-analogous cases. *E.g.*, Opp. at 27.  The '599 claims are fundamentally different from those in cases finding a specific technical improvement.

For instance, in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), the claims recited a "self-referential table," which was a "specific type of data structure designed to improve the way a computer stores and retrieves data in memory." *Id.* at 1339.  The Court explained that the claims are "directed to a specific implementation of a solution in the software arts." *Id.*  In *CardioNet, LLC v. InfoBionic, Inc,* the claims included specific improvements in cardiac monitoring technology, as confirmed by the specification. 955 F.3d 1358, 1368-69 (Fed. Cir. 2020).  In *McRO, Inc. v. Bandai Namco Games Am. Inc.*, the claims contained specific types of limiting rules that an algorithm must follow to practice the animation method, and further confined the way the algorithms must apply those rules.  837 F.3d 1299, 1315 (Fed. Cir. 2016).  And in *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, the claims included the specific means or method to improve the relevant technology—including a monitoring criterion to determine whether to capture an image—consistent with the PTAB's determination during CBM

proceedings.  414 F. Supp. 3d 947, 953-54 (E.D. Tex. 2019).[2]  The claims-in-suit here contain nothing in the way of a "specific implementation of a solution in the software arts," and MPV points to none.

**B.      The '599 Claims Fail *Alice* Step 2.**

MPV argues that the claims comprise "physical systems" or tangible things and are therefore not abstract.  Opp. at 24, *citing* SAC ¶ 112.  MPV misinterprets the law.  The existence of tangible components does not negate an abstract finding.  *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) ("[i]t is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea").

A Step 2 analysis requires the Court to "look to see whether there are any additional features in the claims that constitute an inventive concept, thereby rendering the claims eligible for patenting even if they are directed to an abstract idea."  *Intellectual Ventures I*, 850 F.3d at 1341.  "Those additional features must be more than well-understood, routine, conventional activity."  *Id.*  Relying on elements not in the claims cannot cure abstract claims.  *Two-Way Media*, 874 F.3d at 1338-39 (the *claim* must recite the alleged inventive concept "as opposed to something purportedly described in the specification"); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (the inventive concept must be evident in the claims under step 2).

MPV merely argues that the claimed invention provides "unconventional solutions," but identifies no "additional features" of the claims, as required.  Opp. at 25-27.  It either relies on the abstract claim steps of analyzing and modifying because no other features exist in the claims, or

---

[2]  MPV also relies on **pre-*Alice* case**, *Research Corp. Techs. Inc. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir. 2010), which is not persuasive and inapplicable.  *See Procter & Gamble Co. v. QuantifiCare Inc.*, 288 F. Supp. 3d 1002, 1021 (N.D. Cal. 2017) (dismissing *Research Corp.*'s methodology as "outdated").  The pre-*Alice* decision date negates the decision's relevance.

argues outside of the claims, such as asserting it was conventional "to make a global change to the film or the chemicals or printing parameters."  Opp. at 25.  But the particular film or chemicals are not part of the claims and the printing parameters are modified globally as claim 1 modifies a first parameter for a second parameter.

MPV also claims it was unconventional to effect "only those parts of images that fell within ranges."  *Id.*  That requirement potentially applies only to dependent claim 8 and none of the other asserted claims; however, claim 8 merely requires that the "predetermined colorimetric parameter are *identified* only within that portion of the image identified as containing facial features of people."  Ex. A, col 6:7-10 (emphasis added).  To do that, the specification describes using "standard colorimetric techniques" when setting predetermined color values for the desired skin types.  Ex. A, col. 3:40, 50-57.  Lastly, MPV discusses a "matrix or 3D table of parameters" as unconventional, but a matrix or 3D table of parameters is unclaimed and thus cannot establish an inventive concept.  Opp. at 26.

MPV does not dispute the specification's identification of conventional hardware.  Its only response is to allege a "novel apparatus for modifying digital images that did not previously exist" that is neither claimed nor explained in the specification.  Opp. at 25.  Courts have consistently held that the use of conventional computer components to carry out an abstract idea does not support an inventive concept.  *Two-Way Media*, 874 F.3d at 1339 (nothing in the claims require anything other than a conventional computer and network components); *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017) (non-specific claims that lack technical detail and use conventional computer technology are ineligible).

### C.   Unasserted Claim 14 Does Not Alter the §101 Analysis.

Claim 14 and its dependent claims are ***not*** asserted against defendant.  If the Court considers the unasserted claim, MPV's argument that means-plus-function (MPF) elements

necessitate claim construction, and that "MPF elements are rarely held unpatentable," is wrong on both counts.  Opp. at 27-28.  In cases with MPF claims at issue, a court can simply choose to adopt the non-moving party's preferred construction and corresponding structure from the specification and rule on that basis.  *Landmark Tech., LLC v. Assurant, Inc.*, No. 6:15-CV-76-RWS-JDL, 2015 WL 4388311, at *5, n.1 (E.D. Tex. July 14, 2015).  Alternatively, courts have ruled on §101 issues for MPF claims when the patentee fails to indicate the claim construction issues that would affect the court's analysis.  *See Hyper Search, LLC v. Facebook, Inc.*, No. CV 17-1387-CFC-SRF, 2018 WL 6617143, at *5 (D. Del. Dec. 17, 2018).

**III.  The Claims of the '746, '345 and '604 Video Summary Patents Are Unpatentable Under 35 U.S.C. § 101.**

**A.  The Argument that the Video Patent Claims Require a Particular Order of Steps is Baseless.**

MPV's "order of steps" argument relies on ***dependent*** claim 6 of the '746 patent and ***dependent*** claim 8 of the '345 patent.  It alleges that those steps apply to ***all claims***, and therefore include the dual video paths element—one for the video capture and one for the video summary, and do not cover "post-processing" activity where the video summary is formed after capture of the video.  Opp. at 9-10; SAC ¶ 35.  The purpose of MPV's strained argument is to concoct an unconventionality argument to try to negate ineligibility.[3]  The "order of steps" argument fails for several reasons.

*First,* MPV contends that an element of a ***dependent claim*** should be included in ***all*** claims—even the independent claim from which it depends.  One of the most basic tenets of patent law rejects that argument.  Elements from a dependent claim, by definition, cannot already be present in the independent claim; otherwise, the dependent claim would violate the claim

---

[3] Defendant's argument addressing the alleged unconventionality of the two dependent claims with a "dual path" component is provided in Section III(C) addressing Step 2 of the §101 analysis.

differentiation doctrine, which requires that different claims have different scopes. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) ("where the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest").

*Second,* the specification admits that an embodiment of the claimed invention covers post-processing activity, which disproves MPV's argument:

> In other embodiments, the video summary 255 can be formed using a ***post-processing operation*** that is performed after the digital video file 225 has been captured and stored. Ex. B, col. 13:1-4 (emphasis added).

> In some embodiments, the summary digital video file can be ***created after*** the capture of the video sequence is completed. *Id.* at col. 11:8-10 (emphasis added).

*Third*, MPV relies on claim 6 of the '746 patent to provide the allegedly required order of steps. *See* Opp. at 9, SAC ¶ 35. But '746 claim 16 lists the claim steps in a different order:  first receiving a video sequence and second receiving a designation with respect to a reference image— opposite of the supposed required order of steps. Ex. B, col. 16: 48-65. Inexplicably, MPV's proposed order of steps are in a different order than the flowchart from patent Figure 2 where "capture video sequence" 200 precedes "capture reference image" 210 and "reference image" 215. SAC ¶ 35. But in MPV's order of steps, 215 precedes 200. *Id.*

*Lastly*, a method claim must "mandate" a particular order of steps before construing it to require one. *C-Cation Techs., LLC v. Time Warner Cable, Inc.*, No. 2:14-CV-0059-JRG-RSP, 2015 WL 1849014, at *19 (E.D. Tex. Apr. 20, 2015). Courts have rejected a requirement for a particular ordered method even when the specification *only* teaches embodiments consistent with that order. *Altris, Inc. v. Sumantec Corp.*, 318 F.3d 1363, 1369-70 (Fed. Cir. 2003). MPV's argument is worse; the specification teaches embodiments contrary to MPV's order of steps.

### B.    The Video Summary Patent Claims Fail *Alice* Step 1.

The video summary patent claims are directed to the abstract idea of analyzing a video image file for a reference image, and collecting those image frames in a summary.  This is analogous to the "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" claims held to be unpatentable in *Content Extraction*.  HK Br. at 10; *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).  Tellingly, MPV's opposition does not address *Content Extraction*, or explain why the case is not analogous.  Nor does MPV attempt to rebut the similarity between the abstract claims here and the "collecting information, analyzing it, and displaying certain results of the collection and analysis" in *Electric Power*.  HK Br. at 10; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  MPV also ignores Kokusai's argument that the video summary patent claims are directed to functional language without any indication of how to carry out the claimed invention.  HK Br. at 10-11.  Instead, MPV repeats vague accusations that Kokusai over-generalizes the claims, while at the same time ignoring the claim language, which is, in fact, generalized.

MPV primarily relies on the argument that ***all*** of the video summary patent claims eliminate the need for "post-processing," and therefore include an improvement to technology. But as shown in Section III(A) above, MPV's argument is baseless.  Despite violating a foundational tenet of patent law (that elements from a dependent claim are by definition not in the independent claim), ignoring that the specification admits the claims cover post-processing activity, and that the claims do not mandate the particular order of steps advanced by MPV, it still tries to convince this court it should prevail.  The reasoning?  It argues that all the claims "have at least the ability to" include the dependent claim's limitation.  Opp. at 19.  That simply

makes no sense.  What the claims might be ***capable*** of doing is not the correct foundation for a §101 analysis under *Alice.*  The claims are limited by their elements, not capabilities.

Moreover, even the dependent claims relied on by MPV have no limitations forbidding post-processing; instead, they require that the summary should be "at least partially formed concurrently with the digital video file."  Ex B, col 16:5-7.  If it is "partially formed" along with the digital image file, that must mean it may be fully formed later in post-processing.

Similar to its '599 argument, MPV alleges that the video summary patent claims "provide specific technical solutions to technical problems."  Opp. at 13-14.  That argument again fails. To start, MPV adopts language from *Research Corp. Techs. Inc. v. Microsoft Corp.* that "inventions with specific applications or improvements to technologies in the marketplace" are not abstract.  *Id.* at 14.  But MPV omits that *Research Corp.* is from ***2010 – four years before*** the Supreme Court's *Alice* holding and its substantial progeny, rendering that holding entirely inapplicable.  It is telling that MPV relies on an outdated, inapplicable case, and ignores other binding Federal Circuit authority.

MPV's other technical improvement arguments suffer from the same faults noted above: Nothing in the claims provides the "*how,*" or gives any specific requirements beyond the abstract idea.[4]  Similar arguments where the alleged improvement is simply the abstract idea itself have consistently been rejected under similar facts.  *See* Section II(A).

The video summary patent claims have no ***specific*** improvements, and are nothing like those in *Enfish* where the claims recited a "self-referential table," which was a "specific type of data structure designed to improve the way a computer stores and retrieves data in memory." *Enfish*, 822 F.3d at 1339.  MPV's heavy reliance on *United Servs. Auto. Ass'n v. Wells Fargo*

---

[4]  The same is true for the two dependent claims where MPV alleges a "dual path."  They use purely functional results-oriented language, and fail to explain ***how*** to accomplish what is in the claim.

*Bank, N.A.* fails for the same reasons.  The *USAA* claims included the specific means or method to improve the relevant technology—including a monitoring criterion to determine whether to capture an image, as the PTAB found during CBM proceedings.  414 F. Supp. 3d at 953-54.

### C.   The Video Summary Patent Claims Fail *Alice* Step 2.

MPV again erroneously contends that the presence of physical or tangible components negates a finding that the claims are abstract, which is not relevant because it is well-settled that recitation of a tangible component does not confer eligibility to an abstract idea.  *TLI Commc'ns*, 823 F.3d at 613; *see also* Section II(B), supra.

MPV also argues the video summary patents' "unconventional solutions" pass the Step 2 analysis.  But the alleged "unconventional solutions" are untethered to the claims, which eliminates their relevance, and are in fact conventional.  To start, MPV declares that "designation of a reference image prior to taking of video" is unconventional.  *E.g.*, Opp. at 12.  That requirement is not in any claim because no order of steps is mandated.  Even so, it is routine to designate a reference image before taking a specific video; such as a picture of a suspect by the police, which is then used to search a video.

MPV next argues that "separate and parallel image processing paths" (only arguably applicable to two dependent claims) is an "unconventional solution."  *E.g.*, Opp. at 9.  But the specification describes that the use of two processing paths was conventional: "***many video capture devices*** can simultaneously capture and encode two video streams … using two different processing paths" where one path produces the digital video file and the second path produces the summary digital file.  Ex. B, col. 11:21-28.  MPV similarly alleges creation of the summary video without post-processing, "concurrently or in real time" is an "unconventional solution."  *E.g.*, Opp. at 12.  But the specification explicitly states that "the video summary 255 can be formed using a post-processing operation."  Ex. B, col. 13:2-3.

Next, MPV alleges that the "the ability to save only what is needed for a video summary of matching images without user intervention," and the "creation of summary video of the pre-determined person of interest by applying the referencing throughout the whole video capture process" are unconventional.  Opp. at 9, 12-13.  But these limitations are not in the claims.

Finally, MPV asserts that "making a video summary using metadata without the need to decode a video" is unconventional.  *E.g.*, *Id*. at 13.  Reference to metadata is only in one dependent claim—claim 9 of the '345 patent.  Claim 9 requires that the video summary include "frame identification metadata specifying a set of image frames to be included in the video summary," and includes nothing about decoding a video.  Ex. C, col 16:14-16.  Further, MPV failed to rebut Kokusai's argument that the Federal Circuit has found that using metadata to organize files is "insufficient to transform a patent-ineligible abstract idea into a patent-eligible invention."  HK Br. at 18; *Intellectual Ventures I*, 850 F.3d at 1326.

MPV presents several additional unpersuasive arguments alleging an inventive concept, such as making the creation of a video summary "faster and more efficient," and that the invention runs on conventional hardware.  Opp. at 9, 12.  But there is nothing inventive about using conventional computer hardware and software to perform an abstract idea more efficiently.  *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015).  And MPV fails to identify unconventional hardware used in the invention other than a cite to "electronic circuitry of the special purpose digital video camera," which is not in the passage cited by MPV.  Opp. at 16; Ex. C, col. 3:28-33.

Finally, MPV erects the strawman argument that if the video summary patents are abstract then "any claims directed to camera systems would be unpatentable because all camera

system hardware must somehow be generic."  Opp. at 12.  Of course, a non-abstract claim operating on standard hardware may be valid.  MPV's argument is irrelevant.

**IV.    No Claim Construction or Factual Disputes Exist that Preclude Granting Defendant's Rule 12(b)(6) Motion.**

This district has rejected conclusory claim construction arguments in the §101 context, noting that "*ipse dixit* statements do not establish that claim construction is necessary prior to ruling on a § 101 motion."  *Uniloc USA, Inc. v. E-MDS, Inc.*, No. 6:14-CV-00625-RWS, 2015 WL 10791906, at *3 (E.D. Tex. Aug. 19, 2015) ("[This] would endorse a rule that a § 101 motion can only precede claim construction with a patentee's blessing.").  As described throughout this brief, MPV alleges claim construction arguments that are either entirely baseless, or have no effect on the §101 issues before the Court.  *See also*, Dkt. 34-1 at 4-5 (Defendant Hitachi Kokusai's Statement).

Having the benefit of Kokusai's prior motion to dismiss, MPV attempted to plead around its §101 deficiencies with a series of conclusory allegations and irrelevancies in its SAC and expert declarations, which cannot save its patent-ineligible claims.  Far from "well-pled," these assertions are nothing "more than labels and conclusions" and do not create any relevant factual disputes sufficient to defeat defendant's motion.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

MPV's SAC comprises generic and unsupported allegations and arguments that the invention is supposedly inventive and a distinct improvement over the prior art, which is not sufficient to defeat a motion to dismiss.  *Boom!Payments, Inc. v. Stripe, Inc.*, No. 2020-1274, 2021 WL 116545, at *4 (Fed. Cir. Jan. 13, 2021) (conclusory allegations of unconventionality in the complaint need not be accepted and are of no consequence to the eligibility analysis); *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) (attorney argument in a

complaint is insufficient to establish a factual dispute preventing dismissal).  A typical averment in the SAC is a broad statement that the patent solves a technical problem, is not abstract, or uses an unconventional solution.  What is glaringly missing is any connection to the patent claims; without a connection to the claims, the allegations are irrelevant.  Defendant's brief details examples of how MPV's assertions fail to provide any factual allegations that alter the §101 analysis.

### V.      MPV's Preemption Arguments Do Not Affect Ineligibility.

MPV alleges that none of the four patents "unreasonably" preempt and therefore cannot be found patent ineligible, yet MPV fails to explain the concept of unreasonable preemption.  Opp. at 28.  The "absence of complete preemption does not demonstrate patent eligibility."  *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) (showing alternative uses outside the scope of the claims does not alter the ineligibility conclusion).  As the Federal Circuit noted in *Two-Way Media Ltd.*, "where a patent's claims are deemed only to disclose patent ineligible subject matter under the *Alice* framework, as they are in this case, preemption concerns are fully addressed and made moot."  874 F.3d at 1339; *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362–63 (Fed. Cir. 2015) ("[T]hat the claims do not preempt all price optimization or may be limited to price optimization in the e-commerce setting do not make them any less abstract.")  While preemption may be a concern, it is "not a determinative fact on patent eligibility."  *Network Architecture Innovations LLC v. CC Network Inc.*, No. 2:16-CV-00914-JRG, 2017 WL 1398276, at *6 n.3 (E.D. Tex. Apr. 18, 2017).

*     *     *     *

For the foregoing reasons, Kokusai has shown that the asserted claims of the '599 patent and the video summary patents are ineligible under 35 U.S.C. § 101 for claiming an abstract idea without an inventive concept, and no claim construction is required to make that determination.

15

Dated:  February 5, 2021                    Respectfully submitted,


                                            By: */s/ Nick G. Saros*

J. Thad Heartfield                              Nick G. Saros
Texas Bar No. 09346800                          nsaros@jenner.com
thad@heartfieldlawfirm.com                      Miwa Shoda
THE HEARTFIELD LAW FIRM                         mshoda@jenner.com
2194 Dowlen Road                                JENNER & BLOCK LLP
Beaumont, TX 77706                              633 West 5th Street, Suite 3600
Telephone: 409.866.3318                         Los Angeles, CA 90071
Fax: 409.866.5789                               Telephone: 213.239.5100
                                                Fax: 213.239.5199

                                                Susan A. O'Brien
                                                sobrien@jenner.com
                                                JENNER & BLOCK LLP
                                                353 N. Clark Street
                                                Chicago, IL 60654
                                                Telephone: 312.840.7557
                                                Fax: 312.527.0484

                                                ***Attorneys for Defendant***
                                                ***Hitachi Kokusai Electric Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of February, 2021, the foregoing was filed electronically with the Clerk of Court and to be served via the Court's Electronic Filing System upon all counsel of record.

*/s/Nick G. Saros*              
Nick G. Saros